**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE:**

| | |
|---|---|
| MONARCH METALS, INC., *Plaintiff,* <br><br> v. <br><br> UNITED STATES, *Defendant.* | Court No. <u>24-cv-00266</u> |

## COMPLAINT

Plaintiff Monarch Metals, Inc. ("Plaintiff" or "Monarch"), by and through its undersigned attorneys, alleges and states for its complaint as follows:

### JURISDICTION AND STANDING

1. This is a civil action to contest the denial of protests under Section 515 of the Tariff Act of 1930 (19 U.S.C. § 1515). The protests and underlying protested entries that are the subject of this action are listed in Exhibit A ("Schedule of Protests") attached and incorporated into this complaint.

2. The Plaintiff is the owner and importer of record of the merchandise involved in this action and is the party that caused the protests and underlying protested entries referred to herein to be filed. The Plaintiff thus has standing in this action.

3. The protests that are the subject of this action were each timely filed on the respective dates shown in Exhibit A, Column B ("Date Protest Filed"), within 180 days of the final liquidation of each of the underlying protested entries as shown in Exhibit A, Column F ("Date of Liquidation").

1

4.  The protests that are the subject of this action were each denied pursuant to 19 U.S.C. § 1515(a) on the respective dates shown in Exhibit A, Column C ("Date Protest Denied").

5.  This action was timely commenced within 180 days after the date of mailing of the notices of denial of all of the underlying protests that are the subject of this action.

6.  All duties, charges and exactions assessed at liquidation pertaining to the entries protested in each of the protests referred to herein were paid before commencement of the action.

7.  This court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(a).

## BACKGROUND AND DESCRIPTION OF THE SUBJECT MERCHANDISE

8.  The imported merchandise that is the subject of this action consists of stainless steel wire properly classifiable under Heading 7223 ("Wire of stainless steel") of the Harmonized Tariff Schedule of the United States ("HTSUS"), more specifically under Subheadings 7223.00.10, 7223.00.50, or 7223.00.90 HTSUS.

9.  The subject stainless steel wire entered at the Customs and Border Protection (CBP) Ports of Los Angeles, California (Port Code 2704), St. Louis, Missouri (Port Code 4503), and Houston, Texas (Port Code 5301) in March 2023 through May 2023 on the specific entry dates listed in Exhibit A, Column E ("Date of Entry").

10. The subject stainless steel wire had been manufactured by being drawn into wire in China from stainless steel rod that had been melted, alloyed, poured, and cast into rod in Japan by Japanese steel manufacturer Nippon Steel Stainless Steel Corporation (Nippon Steel), before shipment to China to be drawn into the subject imported stainless steel wire.

11. The Nippon Steel stainless steel rod used in the production of the subject stainless steel wire was identifiable in the ordinary course of its manufacture by unique cast numbers, also known as heat numbers, which were assigned to each batch of cast stainless steel rod by Nippon Steel at the time of melting, alloying, pouring, and casting, and which are always in a form beginning with the letter "E" followed by five numerical digits, such as "E52610" or "E54544."

12. The relevant Nippon Steel cast numbers appear on entry and related commercial documents associated with the subject stainless steel wire, including on Nippon Steel Inspection Certificates, Certificates of Quality prepared by the Chinese company drawing the rod into wire (where the Nippon Steel cast number is alternatively identified and referred to as the "HeatNo"), and commercial documents prepared by the Chinese shipping company (where the Nippon Steel cast number is again alternatively identified and referred to as the "Heat No").

13. Monarch's use of Nippon Steel cast number identification system assures that the provenance, alloy content, and other technical specifications of the steel rod can be traced from the stainless steel rod through to the finished stainless steel wire drawn from the rod that is then imported into the United States and ultimately delivered to Monarch. The Nippon Steel cast number for all of the rod used in the manufacture of the subject stainless steel wire thus allows the subject stainless steel wire to be traced back to the original melted, alloyed, poured, and cast Japanese Nippon Steel rod from which the subject stainless steel wire was drawn.

**COUNTRY OF ORIGIN AND SUBSTANTIAL TRANSFORMATION**

14. At the time of each subject entry, the law of the United States was that the country of origin of stainless steel wire such as the subject wire was determinable by application of the

"substantial transformation" principal, whereby the drawing of steel rod into steel wire does not result in a substantial transformation of the steel rod, thus leaving the country of origin of the drawn wire the same as the steel rod from which it was drawn. *See Superior Wire v. United States*, 669 F. Supp. 472 (Ct. Int'l Trade 1987), *affirmed* 867 F.2d 1409 (Fed. Cir. 1989), where both the trial and appellate courts considered the drawing of wire from rod to be a minor rather than a substantial transformation that does not result in a change of country of origin.

15.     CBP has subsequently also ruled that the drawing of steel rod into steel wire does not result in a substantial transformation of the steel rod, leaving the country of origin of the resulting wire the same as the steel rod from which it was drawn. *See, e.g.*, CBP Rulings NY N320677 (08/25/2021) and NY N311518 (05/07/2020).

## COUNT I

**The subject stainless steel wire was properly considered to originate from Japan, rather than from China as entered.**

16.     The allegations of Paragraphs 1 through 15 are incorporated into this paragraph by reference as if fully set forth herein.

17.     At the time of each subject entry, Monarch and its customs brokers reasonably believed that steel wire that had been drawn from rod into wire in China would be considered to originate from China under applicable U.S. country of origin laws. Accordingly at the time of entry Monarch declared China as the country of origin for all of the subject wire.

18.     At the time of each subject entry, however, the country of origin of Monarch's subject stainless steel wire was properly Japan under applicable U.S. court precedent and established CBP practice, *i.e.* the country where the stainless steel rod used to draw the subject wire had been melted, alloyed, poured, and cast into rod by Nippon Steel.

## COUNT II

### As the product of Japan, the subject stainless steel wire was not subject to the China Section 301 tariff as deposited at the time of entry.

19.     The allegations of Paragraphs 1 through 18 are incorporated into this paragraph by reference as if fully set forth herein.

20.     At the time of each subject entry, goods of Chinese origin under U.S. law and entering the United States classifiable under Subheadings 7223.00.10, 7223.00.50, or 7223.00.90 HTSUS were subject to a 7.5% additional tariff imposed pursuant to Section 301 of the Trade Act of 1974 (hereinafter the "China 7.5% Section 301 tariff"). Deposits of these China 7.5% Section 301 tariff amounts were reportable on subject entries under secondary tariff classification 9903.88.15 HTSUS.

21.     At the time of each subject entry, goods of non-Chinese origin under U.S. law, including goods of Japanese origin, and entering the United States classifiable under Subheadings 7223.00.10, 7223.00.50, or 7223.00.90 HTSUS, were not subject to the China 7.5% Section 301 tariff or any other tariff imposed pursuant to Section 301 of the Trade Act of 1974.

22.     At the time of each subject entry, Monarch, believing incorrectly that their subject stainless steel wire was of Chinese origin under U.S. law (*see* paragraph 16 *supra*) and thus subject to the China 7.5% Section 301 tariff, erroneously deposited excess duties on the subject entries of stainless steel wire pursuant to the China 7.5% Section 301 tariff. Deposits of these excess duties were reported and are identifiable on subject entry documents under secondary tariff classification 9903.88.15 HTSUS.

23.     Because the subject stainless steel wire was of Japanese origin under U.S. law rather than Chinese origin and thus <u>not</u> subject to the China 7.5% Section 301 tariff, all duties deposited on the subject stainless steel wire under the China 7.5% Section 301 tariff and reported on entry documents under secondary tariff classification 9903.88.15 NTSUS were excess duties that are now refundable with interest under U.S. law.

24.     Monarch timely protested CBP's assessment of the China 7.5% Section 301 tariff upon liquidation of the subject entries, but these protests have been denied by CBP and are now the subject of this case.  In each of its denials, CBP stated that the reason for the denial was "Insufficient back up to determine the stainless steel wire rod is produced in Japan" or "The documentation submitted does not substantiate the claim of Country of Origin being Japan."

## COUNT III

**As the product of Japan, the subject stainless steel wire was not subject to the 25% Section 232 Steel tariff as deposited at the time of entry.**

25.     The allegations of Paragraphs 1 through 24 are incorporated in this paragraph by reference as if fully set forth herein.

26.     At the time of each subject entry, goods of Chinese origin under U.S. law and entering the United States classifiable under Subheadings 7223.00.10, 7223.00.50, or 7223.00.90 HTSUS were subject to a 25% additional tariff imposed pursuant to Section 232 of the Trade Expansion Act of 1962 as proclaimed in Proclamation 9705, titled "Adjusting Imports of Steel Into the United States" and published in the Federal Register at 83 FR 11625 (March 15, 2018) (the "25% Section 232 Steel Tariff").  Deposits of the 25% Section 232 Steel Tariff were reportable on subject entries under secondary tariff classification 9903.80.01 HTSUS.

27. At the time of each subject entry, drawn stainless steel wire of Japanese origin under U.S. law and entering the United States classifiable under Subheadings 7223.00.10, 7223.00.50, or 7223.00.90 HTSUS, was subject to a tariff-rate quota system implemented pursuant to Proclamation 10356 of March 31, 2022, titled "Adjusting Imports of Steel into the United States" and published in the Federal Register at 87 FR 19351 (April 1, 2022) (the "Japan Section 232 TRQ").

28. Pursuant to the Japan Section 232 TRQ, specific aggregate quarterly and annual quantities of Japanese-origin steel imports were authorized to enter duty-free each calendar quarter, free of the 25% Section 232 Steel Tariff that would otherwise apply ("in quota" goods). These aggregate quantities were divided into specific subcategories of steel products for quota allocation, data collection, and reporting purposes. In-quota Japanese-origin drawn wire of stainless steel classifiable under Subheadings 7223.00.10, 7223.00.50, or 7223.00.90 HTSUS and qualifying for duty-free entry under the Japan Section 232 TRQ was allocated to Quota/License ID Number 99038154STRQ and reported on entries under secondary tariff classification 9903.81.54 HTSUS rather than under 9903.80.01 HTSUS.

29. At all times relevant to the subject entries, CBP published a weekly Quota Status Report reporting for each Quota/License ID Number, Quota/License Commodity Description, and Quota/License Country Name, *inter alia* the Quota Period and the Quota Period's Effective Begin Date, Effective End Date, Maximum Quantity, Unit of Measure, Allocated Quantity Percent Filled, and Status Code.

30. At the time of each subject entry, Monarch, believing incorrectly that their subject stainless steel wire was of Chinese origin under U.S. law (*see* paragraph 16 *supra*) and thus subject to the 25% Section 232 Steel tariff, deposited excess duties on the subject entries of

stainless steel wire pursuant to Section 232 of the Trade Act of 1974. Deposits of these excess 25% Section 232 Steel Tariff duties were reported and are identifiable on subject entry documents under secondary tariff classification 9903.80.01 HTSUS.

31. Because the subject stainless steel wire was of Japanese origin under U.S. law rather than Chinese origin, the wire was eligible for treatment as in-quota wire, free from the 25% Section 232 Steel Tariff to the extent that a sufficient quota allocation was available at the time of entry.

32. At all times relevant to the subject entries, a sufficient quota allocation was available to allow in-quota treatment of the subject stainless steel wire under secondary tariff classification 9903.81.54 HTSUS rather than under 9903.80.01 HTSUS and entry free from the 25% Section 232 Steel Tariff.

33. Monarch timely protested CBP's assessment of the 25% Section 232 Steel Tariff upon liquidation of the subject entries, but these protests have been denied by CBP and are now the subject of this case.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in its favor, as follows:

(a) overruling Defendant's denial of protests;

(b) determining that the subject stainless steel wire originated from Japan;

(c) determining that the subject stainless steel wire was not subject to the China 7.5% Section 301 tariff at the time of entry;

(d) determining that the subject stainless steel wire was not subject to the 25% Section 232 Steel tariff at the time of entry;

(e) determining that all China 7.5% Section 301 tariffs and 25% Section 232 Steel tariffs deposited by the Plaintiff on the subject entries are refundable to the Plaintiff together with interest as provided by law;

(f) ordering the Defendant to reliquidate the subject entries and refund to the Plaintiff all China 7.5% Section 301 tariffs and 25% Section 232 Steel tariffs deposited on the subject entries, together with interest as provided by law; and

(g) granting such other additional relief as this honorable Court may deem just and appropriate.

Dated:    13 June 2025

                                                Lawrence R. Pilon, Attorney

Rock Trade Law LLC
134 North LaSalle Street, Suite 1800
Chicago, Illinois 60602
312-824-6195 (telephone)
lpilon@rocktradelaw.com (e-mail)

*Counsel For Plaintiff Monarch Metals, Inc.*

# EXHIBIT A

## SCHEDULE OF PROTESTS

| A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|
| Protest Number | Date Protest Filed | Date Protest Denied | Entry Number | Date of Entry | Date of Liquidation | Port Code |
| 2704-24-170477 | 07/30/2024 | 08/26/2024 | 399-1093993-1 | 03/17/2023 | 02/09/2024 | 2704 |
| 4503-24-101723 | 06/18/2024 | 07/23/2024 | 399-1103771-9 | 09/25/2023 | 12/22/2023 | 4503 |
| 4503-24-101729 | 07/23/2024 | 08/26/2024 | 399-1093282-9 | 03/07/2023 | 02/02/2024 | 4503 |
| 4503-24-101730 | 07/24/2024 | 08/26/2024 | 399-1093284-5 | 03/07/2023 | 02/02/2024 | 4503 |
| 4503-24-101736 | 08/02/2024 | 08/26/2024 | 399-1094348-7 | 03/31/2023 | 02/23/2024 | 4503 |
| 4503-24-101746 | 08/15/2024 | 10/03/2024 | 399-1097499-5 | 06/04/2023 | 04/26/2024 | 4503 |
| 4503-24-101747 | 08/30/2024 | 10/03/2024 | B5T-0008067-5 | 06/30/2023 | 05/24/2024 | 4503 |
| 4503-24-101748 | 09/03/2024 | 10/03/2024 | 399-1100148-3 | 08/04/2023 | 06/21/2024 | 4503 |
| 4503-24-101761 | 11/11/2024 | 12/11/2024 | 399-1104638-9 | 10/23/2023 | 09/06/2024 | 4503 |
| 4503-24-101762 | 11/15/2024 | 12/11/2024 | 399-1107108-0 | 12/10/2023 | 11/01/2024 | 4503 |
| 5301-24-109869 | 06/17/2024 | 07/23/2024 | B5T-0007278-9 | 01/29/2023 | 12/22/2023 | 5301 |
| 5301-24-109967 | 08/09/2024 | 08/26/2024 | B5T-0007768-9 | 05/02/2023 | 03/29/2024 | 5301 |
| 5301-24-109969 | 08/13/2024 | 08/26/2024 | B5T-0007884-4 | 05/27/2023 | 04/19/2024 | 5301 |

## CERTIFICATE OF SERVICE BY MAIL

I, Lawrence R Pilon, one of the attorneys for the Plaintiff, certify that a copy of the foregoing Complaint was served on all parties by depositing a copy in a United States mail receptacle at or before 5:00 p.m. this Friday, June 13, 2025, by certified mail, return receipt requested, in a sealed envelope with proper postage prepaid, addressed to each party or its attorney of record at the address(es) listed below:

| | |
|---|---|
| Guy R. Eddon<br>U.S. Department of Justice<br>International Trade Field Office<br>26 Federal Plaza<br>Room 346<br>New York, NY 10278 | Attorney-in-Charge<br>U.S. Department of Justice<br>International Trade Field Office<br>26 Federal Plaza - Room 346<br>Civil Division<br>New York, NY 10278 |
| CBP Assistant Chief Counsel<br>U.S. Department of Homeland Security<br>International Trade Litigation<br>U.S. Customs and Border Protection<br>26 Federal Plaza - Room 258<br>New York, NY 10278 | |

Dated:   13 June 2025

_____
Lawrence R. Pilon, Attorney
Rock Trade Law LLC
134 North LaSalle Street, Suite 1800
Chicago, Illinois  60602
312-824-6195 (telephone)
lpilon@rocktradelaw.com (e-mail)

*Counsel For Plaintiff Monarch Metals, Inc.*